IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GEORGE LAMPLUGH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-218 (MN) |
| | ) |
| PFB ENERGY d/b/a Delaware City Refining | ) |
| Company LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

George Lamplugh, Glen Mills, Pennsylvania.   Pro Se Plaintiff.

Peter L. Frattarelli and Kevin F. Shaw, ARCHER & GREINER, P.C., Wilmington, Delaware. Counsel for Defendants.

July 28, 2022
Wilmington, Delaware

**NOREIKA, U.S. District Judge**:

Plaintiff George Lamplugh ("Plaintiff"), who appears *pro se* filed this action on February 1, 2019. (D.I. 2). The Court has jurisdiction pursuant to 28 U.S.C. § 1332 by reason of diversity of the parties. The matter proceeds against Defendants PBF Energy d/b/a Delaware City Refining Company LLC ("DCRC") and Brian Miller ("Miller"). Before the Court is Defendants' motion for summary judgment. (D.I. 48). Plaintiff opposes. The matter has been fully briefed.

## I.     BACKGROUND

### A.     Allegations

The original Complaint (D.I. 2), together with the Amended and Supplemental Pleadings (D.I. 15), comprise the operative pleading. Plaintiff alleges that he applied for employment as a refinery operator with DCRC, accepted an offer of employment on January 13, 2016, and was scheduled to begin work on February 16, 2016. (D.I. 2 at 6). On February 10, 2016, Plaintiff was informed by DCRC human resources that DCRC was rescinding its employment offer "based on information brought to the attention of human resources from a former supervisor." (*Id.*). The identity of the supervisor was not disclosed, but Plaintiff believes the information was provided by Miller a current DCRC employee, who supervised Plaintiff when they were both employed at Sunoco Company, Inc. ("Sunoco"). (*Id.*). Plaintiff alleges that Miller was involved in the termination of Plaintiff's employment with Sunoco and was also the main witness during the arbitration proceedings that followed. (*Id.*). Two claims survive following motions to dismiss filed by Defendants: Claim 4, promissory estoppel against DCRC and Claim 7, slander and libel against Miller.

1

B.  **Facts Presented by Defendants**[1]

Plaintiff was employed by Sunoco as a refinery operator in the ethylene complex unit. (D.I. 51 at 8-9, 18-19). At the same time Plaintiff was employed by Sunoco, Miller was employed there as an area superintendent for the ethylene complex, and he supervised shift supervisors who directly supervised Plaintiff. (*Id*. at 18-19). Plaintiff was terminated from Sunoco for sending an email to Miller which contained the phrase "GFY" (*i.e.*, go fuck yourself) and for attending the Orange Bowl when he was allegedly under a doctor's care and unable to work. (*Id*. at 24-34). Plaintiff's union filed a grievance on his behalf protesting his termination, claiming unjust termination. (*Id*. at 25). An arbitration hearing was held in November 2006, and the arbitration opinion and award, issued March 1, 2007, denied Plaintiff's grievance and found "there was just cause for the discharge." (*Id*. at 34).

At some point after he was no longer employed by Sunoco, Plaintiff purchased ten arcade game machines and stored them at Ice Works. (*Id*. at 15). Plaintiff paid a monthly rental fee to Ice Works for his arcade game machines and estimated the business generated monthly revenue of $800.00. (*Id*.). Plaintiff also testified that after he was terminated from Sunoco he intended to start a flounder fishing business in Ocean City, Maryland. (*Id*.). He created an LLC and planned to rent a boat slip to store his boat and charge people to take them flounder fishing on his boat. (*Id*. at 15-16).

In late 2015, Plaintiff applied for the position of refinery operator with DCRC. (D.I. 2 at 6). Plaintiff took a written mechanical abilities test and had an in-person interview. (D.I. 51 at 6). During the interview, Plaintiff discussed his termination from Sunoco. (*Id*. at 6-7). He

---

[1]  Plaintiff's opposition contains argument and case law, but does not cite to any facts in the record and did not attach any exhibits to support his position other than a medical record.

2

testified that this was the only time that he discussed his termination with anyone at DCRC. (*Id*. at 6, 10). Plaintiff told the interviewers that he was terminated after sending an email to Miller with GFY in it. (*Id*. at 7). He testified that he went into great detail about what happened vis a vis his termination and told them that he had lost an arbitration, but could not recall if he told the interviewers that he also had been terminated for abuse of sick leave and FMLA leave. (*Id*.). DCRC human resources manager Barbara Roehl ("Roehl") stated that she interviewed Plaintiff and recalled only that Plaintiff stated his termination from Sunoco was because he was "an immature 30-year old" and that and he did not state that he was terminated because of the GFY comment or because of abuse of sick leave or FMLA leave. (*Id*. at 10).

Following the interview, Plaintiff received a congratulatory phone call from DCRC telling him he had gotten the job. (*Id*. at 8, 9). On January 13, 2016, DCRC extended Plaintiff an offer of employment by letter with a start date of February 16, 2016. (*Id*. at 8, 9, 46). Plaintiff accepted the offer and, on January 16, 2016, human resources supervisor Cynthia L. Parker sent Plaintiff a letter with several documents including DCRC's new hire packet. (*Id*. at 48). Plaintiff testified that when he received the offer from DCRC, he "decided to focus one hundred percent on DCRC. So [he] got rid of any other prospective advantages that [he] may have had . . . going in to concentrate strictly on DCRC." (*Id*. at 15). Plaintiff told Ice Works to "find somebody else." (*Id*.).

In February 2016 Miller learned that Plaintiff applied for a job position with DCRC.[2] (*Id*. at 18-19). At the time, Miller "was employed as a technical manager for Paulsboro Refining Company LLC ("PRC")." (*Id*. at 18). PRC and DCRC are affiliated corporations that have common ownership and some overlap of corporate services." (*Id*.). Plaintiff testified that when

---

[2]   Miller is the current operations manager for DCRC.

3

he was interviewed for the DCRC position he did not know whether PRC and DCRC were affiliated or related in any way. (*Id*. at 14). Miller provided a copy of the March 1, 2007 American Arbitration Association opinion and award to Roehl. (*Id*. at 19, 50, 51). Miller "suggested that DCRC consider the information in the arbitration opinion prior to employing Plaintiff." (*Id*. at 19). Plaintiff testified that he does not "know exactly what was said between [Miller] and whoever he contacted at DCRC" when Miller provided the arbitration award and opinion. (*Id*. at 13).

Sometime between February 1, 2016 and February 10, 2016, Plaintiff received a call from Roehl who informed Plaintiff that DCRC was withdrawing its offer of employment. (*Id*. at 10, 11). On February 10, 2016, Roehl sent Plaintiff a letter regarding DCRC's decision to rescind Plaintiff's offer of employment and explaining the reason the offer was rescinded. (*Id*. at 10, 54). The letter stated that after the offer of employment had been extended to Plaintiff, human resources received information from supervisors at DCRC refineries who had work experience with Plaintiff and who were involved in the arbitration following Plaintiff's termination from the Sunoco Marcus Hook Refinery. (*Id*. at 54). The letter referred to the arbitrator's decision that was in favor of Sunoco and that upheld the termination. (*Id*.). It also referenced that the termination occurred in 2006 and that Plaintiff had admitted to being an immature 30-year old at the time. (*Id*.). The letter stated that after further reviewing the situation, DCRC felt the circumstances leading to the arbitrator's decision were serious enough to rescind the job offer and that the decision was final. (*Id*.).

Plaintiff testified that he knew that Roehl was referring to Miller in the February 10, 2016 letter when she used the word "supervisor" because "there's only one" person it could be. (*Id*. at 13). Plaintiff explained that Miller was the only one he had worked at DCRC who was involved

4

in his arbitration. (*Id*. at 10). Plaintiff told his friend Bob Martino ("Martino") that DCRC had rescinded the job offer. (*Id*. at 12). Martino told Plaintiff he was friends with Jim Fedena ("Fedena"), a member of management associated with DCRC, and he would call Fedena "to try to find out what happened." (*Id*. at 11-12). When Martino contacted Fedena, he was told that Miller gave the arbitration opinion to DCRC. (*Id*. at 11). In turn, Martino informed Plaintiff that Fedena told him that Miller gave the arbitration opinion to DCRC. (*Id*. at 12). Plaintiff testified that through these interactions between himself, Martino and Fedena, "we had found out that it was actually Brian Miller . . . that reached out to" DCRC. (*Id*. at 11). After Plaintiff received the information from Martino, he emailed Fedena on February 18, 2016. (*Id*. at 12, 56-57).

Plaintiff did not pursue the Ice Works business or flounder fishing business after the DCRC rescinded the job offer. (*Id*. at 15-16). He did not return to Ice Works to see if he had been replaced and, between February and April of 2016, he decided not to start the flounder fishing business and sold his boat sometime in April or May. (*Id*. at 16-17). Plaintiff testified that he started a marina business in November 2020. (*Id*. at 16).

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine issue of material fact exists, this Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party, and a factual dispute is material when it

5

"might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49 (1986).

The nonmoving party bears the burden to establish the existence of each element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In doing so, the non-moving party must present specific evidence from which a reasonable fact finder could conclude in his favor. *Anderson*, 477 U.S. at 248; *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Summary judgment should be granted if no reasonable trier of fact could find for the non-moving party. *Radich v. Goode*, 886 F.2d 1391, 1395 (3d Cir. 1989).

Plaintiff did not support his renewed motion when he failed to cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact" as is required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56(c)(1)(A) & (B). "[T]he court is not obliged to scour the record to find evidence that will support a party's claims." *Perkins v. City of Elizabeth*, 412 F. App'x 554, 555 (3d Cir. 2011); *see also Holland v. New Jersey Dep't of Corr.*, 246 F.3d 267, 285 (3d Cir. 2001) (The court should not "be required to scour the . . . records and transcripts, without specific guidance, in order to construct specific findings of fact" to support its memorandum opinion and order.).

Defendants move for summary judgment on the grounds that Plaintiff cannot establish the necessary elements of a promissory estoppel claim and the libel/slander claim is time-barred and fails as a matter of law.

6

### III. DISCUSSION

#### A. Promissory Estoppel

Plaintiff alleges that DCRC offered him a position for employment; he accepted and surrendered two businesses relying on the hiring agreement; and DCRC retracted the offer entirely based upon Miller's unsolicited biased information which intentionally and purposely interfered and led DCRC to breach the terms of employment. (D.I. 2 at 7).

To state a claim for promissory estoppel, a plaintiff must prove by clear and convincing evidence that: "(i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise." *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 876 (Del. 2020) (quoting *SIGA Techs, Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 347-348 (Del. 2013)).

Defendants argue that there is no record evidence that DCRC, upon its offer of employment, had a reasonable expectation to induce Plaintiff's actions in surrendering his two businesses and no injustice arose out of the facts and circumstances of this case. Conversely, Plaintiff argues that he has met all the required elements of promissory estoppel.

Issues of fact preclude summary judgment. As to inducement, while there is no record evidence of discussion among the parties of Plaintiff's business ventures or that DCRC had knowledge of them, Plaintiff testified that once he received the offer of employment he told Ice Works to find someone else.[3] Plaintiff also testified that when he was offered the position he

---

[3] The Court does not discuss inducement as it relates to the flounder fishing venture since Plaintiff did not start the business.

7

decided to focus on it and rid himself of the vending business. *See e.g.*, *Mimm v. Vanguard Dealer Services, LLC*, C.A. No. 11-736-GMS, 2014 WL 718296, at *2 (D. Del. Feb. 25, 2014) (fact questions regarding representation of employment made to Plaintiff who left his position and relied upon the representation to his detriment).

As to injustice, because DCRC rescinded its job offer, Defendants argue that Plaintiff's lack of candor and/or completeness during the DCRC job interview regarding Sunoco's employment termination due to abuse of time-off caused DCRC to make the reasonable, legitimate business decision to rescind its employment offer. Roehl states that the topic of time-off never arose during Plaintiff's interview, while Plaintiff testified that although he did not recall if the topic came up, he went into great detail about his prior termination and disclosed that he had lost an arbitration. Thus, there is a genuine fact as whether discussion of abuse of time-off and abuse of family leave occurred during the interview. Construing the facts in the light most favorable to Plaintiff, the nonmoving party, a reasonable jury could find than an injustice occurred and that Plaintiff's reliance on the job offer was reasonable assuming the time-off/family leave issues were discussed during the interview. Whether this occurred is a question for the jury. *See e.g.*, *Lord v. Peninsula United Methodist Homes, Inc.*, C.A. No. 97C-10-0122001 WL 392237, at *4 (Del. Super. Apr. 12, 2001).

Because there remain genuine issues of fact, this Court concludes summary judgment is not appropriate on the issue of promissory estopped.

**B.** **Libel/Slander**

Plaintiff alleges that Miller provided DCRC an arbitration document that Plaintiff asserts contains false or inaccurate information. Plaintiff alleges the arbitration document refers to FMLA violations raised against him when he was employed by Sunoco, that Plaintiff later sued

8

Sunoco over the FMLA claim, and the matter was settled. (D.I. 15 at 1). Defendants seek summary judgment on the grounds that the issue is time-barred and fails as a matter of law.

Defamation consists of the "twin torts" of libel (written defamation) and slander (spoken defamation). "Defamation is generally understood as 'a false publication calculated to bring one into disrepute.'" "In general, the scope of liability for slander is not as great as that for libel, and the pleading requirements for slander are more strict." To state a claim for defamation, a plaintiff must plead: (1) a defamatory communication; (2) publication; (3) reference to the plaintiff; (4) the third party's understanding of the communication's defamatory character; and (5) injury. *Optical Air Data Sys., LLC v. L-3 Commc'ns Corp.*, C.A. No. N17C05619EMDCCLD, 2019 WL 328429, at *7 (Del. Super. Jan. 23, 2019) (internal citations omitted).

Summary judgment is appropriate for several reasons. At his deposition Plaintiff testified that defamation claim rests on two facts: Miller is not directly involved and did not work at DCRC when he passed on the arbitration agreement, and Miller passed on the arbitration agreement that Plaintiff believes has incorrect information. (D.I. 51 at 13). Miller's affidavit states that in February 2016, he was employed as a technical manager for Paulsboro Refining Company and that it and DCRC are affiliated corporations that have common ownership and some overlap of corporate services. (D.I. 51 at 18). Miller had supervised Plaintiff at Sunoco and when he learned that DCRC was considering hiring Plaintiff, he forwarded the DCRC human resources manager a copy of the arbitration decision regarding the termination of Plaintiff's employment with Sunoco. (*Id.* at 19).

First, the record evidence does not support a defamation claim. Defamation relies on specific statements. *Preston Hollow Capital LLC v. Nuveen LLC*, C.A. No. CVN19C10107 MMJCCLD, 2020 WL 7365808, at *7 (Del. Super. Dec., 15, 2020). Plaintiff does not know

9

exactly what Miller said or who he contacted at DCRC. (D.I. 13-14). To the extent the claim rests upon the arbitration decision provided by Miller, it was written by Arbitrator Robert E. Light, not Miller. The claim does not contain the required elements of defamation.

Second, Defendants assert that Miller is protected by the qualified common interest privilege. The qualified common interest privilege protects "communication . . . between two parties who have a common interest for the protection of which the allegedly defamatory communications are made." *Bickling v. Kent Gen. Hosp., Inc.*, 872 F. Supp. 1299, 1307 (D. Del. 1994) (internal quotation marks omitted). Discussions about the "character or qualifications of an employee or former employee made to any person who has a legitimate interest in the subject matter" may fall within the scope of this privilege. *Id.* (internal quotation marks omitted). Plaintiff's testimony that Miller did not work at DCRC when he forwarded the information to its human resources manager does not overcome the fact that at the time Miller worked at Paulsboro Refining and that it and DCRC have common ownership and some overlap of corporate services. It follows, therefore, that there is a shared common interest for the protection of the allegedly defamatory communication; whether DCRC should employ Plaintiff in light of the reasons he was discharged by Sunoco as set forth in the arbitration decision. Miller is protected by qualified common interest privilege.

And third, the claims are barred by the absolute litigation privilege. "Delaware adheres to the common law rule of 'absolute privilege' that 'protects from actions for defamation statements of judges, parties, witnesses and attorneys offered in the course of judicial proceedings so long as the party claiming the privilege shows that the statements issued as part of a judicial proceeding were relevant to a matter at issue in the case.'" *Trice v. Chapman*, C.A. No. 12-491-GMS, 2012 WL 3762872, at *6 (D. Del. Aug. 28, 2012) (quoting *Barker v. Huang*, 610 A.2d 1341, 1349 (Del.

1992)); *see also Koch v. Pechota*, 744 F. App'x 105, 114 (3d Cir. 2018)). Statements made in the context of arbitration proceedings are privileged. *See Wright v. Pepsi Cola Co.*, 243 F. Sup. 2d 117, 124 (D. Del. 2003).

The evidence of record does not support Plaintiff's defamation claim against Miller. Therefore, the Court will grant Defendants' motion for summary judgment on this issue.[4]

## IV. CONCLUSION

For the above reasons, the Court will grant-in-part and deny-in-part Defendants' motion for summary judgment. (D.I. 48).

An appropriate order will be entered.

---

[4] The Court will not address whether the claim is time-barred as summary judgment is appropriate on other grounds.